# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00185-CV

**Maria Elizabeth Browne, Appellant**

**v.**

**Richard Gordon Browne, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-FM-07-001900, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final divorce decree dissolving the marriage of Appellant Maria Elizabeth Browne and Appellee Richard Gordon Browne. In this pro se appeal, Maria raises several issues in which she attacks the divorce decree and seeks actions from this Court relating to the divorce proceedings. Because we conclude that Maria's issues are without merit, we affirm the trial court's judgment.

## BACKGROUND

Maria and Richard were married in 1982. They had one child during their marriage.[1] The couple separated in March 2007, and Maria petitioned for a divorce the following month. Maria later amended her petition to seek a disproportionate share of the community estate for several

---

[1] The couple's child was over eighteen years of age at the time of the divorce hearing.

reasons, including an allegation that Richard was at fault in the breakup of the marriage. The trial court held a hearing in November 2007.

At the hearing, Richard testified that he had worked for Xerox Corporation for approximately twenty-five years. During his years of employment, he accumulated retirement savings in a 401(k) account in the amount of approximately $200,000. For at least two years prior to the divorce hearing, Maria worked for Eanes Independent School District as a teaching assistant for a preschool class. She quit her job in May 2007, a month after filing for divorce.

Testimony at the hearing established that the couple had invested in real estate and accumulated several properties during their marriage. At the time of the divorce, they had four properties, one on Cerro Alto Cove ("the Cerro Alto property"), one on Bob Wire Road ("the Bob Wire property"), and two on Lipan Trail ("the first Lipan Trail property" and "the second Lipan Trail property"). The couple had a mortgage on the Cerro Alto property, and the balance due on the mortgage was approximately $229,000 at the time of the divorce. They also had taken out a loan against Richard's retirement account for approximately $50,000 to purchase the Bob Wire property. At the time of the divorce hearing, they owed approximately $41,000 on the loan. A money-market account in the amount of approximately $9,000 at the time of the hearing was being used to pay back some of the loan on the Bob Wire property.

After the hearing, the trial court granted the divorce and awarded Maria the two Lipan Trail properties, one-half of Richard's retirement account, and some personal property, including two vehicles. The trial court awarded Richard the Cerro Alto property, the Bob Wire property, the money-market account, one-half of his retirement account, and some personal property, including

2

two vehicles. The trial court ordered Richard to sell the Bob Wire property and pay the loan on the property, and awarded him the proceeds of the sale of the property after paying the loan. Richard was also responsible for the mortgage on the Cerro Alto property and the loans on the two vehicles awarded to him. Each party was ordered to pay his or her attorney's fees. Maria appealed the trial court's final divorce decree. After Maria filed an appeal, Richard filed a motion for damages in the amount of his attorney's fees, alleging that Maria's appeal was frivolous.

## DISCUSSION

Maria seeks the following actions from this Court: (1) enforcement of the divorce decree; (2) consideration of additional documents not considered in the trial court; (3) issuance of an order requiring Richard to disclose additional documents; (4) reversal of the divorce decree based on the trial court's failure to award Maria spousal maintenance and a portion of the proceeds of the sale of the Bob Wire property; (5) issuance of an order requiring Richard to pay for Maria's trial counsel's fees because her trial counsel allegedly provided ineffective assistance; and (6) issuance of a peace bond. We address each issue below. We then address several miscellaneous requests submitted by Maria. As a final matter, we address Richard's motion for damages.[2]

### *Enforcement of Divorce Decree*

Maria raises several issues that appear to be requests for this Court to enforce the terms of the divorce decree. Specifically, Maria complains that: (1) the one-half portion of

---

[2] All of the information necessary for the disposition of the issues in this appeal is available in the clerk's record and the transcript of the divorce hearing, and all references to the record in this opinion are references to those two items.

Richard's retirement account awarded to her in the divorce decree was not promptly transferred to her account, and once it was transferred, it was inexplicably transferred back out of the account and then replaced with a lesser amount; (2) Richard has not provided her with the deposits on the rental properties awarded to her in the divorce decree; (3) Richard has not provided her with several appliances and other items awarded to her in the divorce decree; (4) Richard damaged other items awarded to her in the divorce decree such that he rendered them unusable; and (5) her credit is adversely affected by the loan on the Cerro Alto property even though the property was awarded to Richard. Regarding the items awarded to her that were either not provided to her or damaged, Maria seeks compensation. Regarding the loan on the Cerro Alto property awarded to Richard, Maria seeks an order releasing her of financial responsibility for the loan. For the remaining issues, she appears to seek an enforcement order.

Although Maria may have valid enforcement issues, she must raise those issues with the trial court, which is the proper court to enforce its own decrees.[3] *See* Tex. R. Civ. P. 308 ("The court shall cause its judgments and decrees to be carried into execution."); Tex. Fam. Code Ann. § 9.006(a) (West 2006) ("[T]he court may render further orders to enforce the division of property made in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order.") We therefore overrule all of Maria's issues that relate to enforcement of the divorce decree.[4]

---

[3] There is nothing in the record to suggest that Maria sought enforcement of the divorce decree from the trial court.

[4] Maria also seems to request that we enforce a Travis County standing order that requires the parties in a divorce suit or a suit affecting the parent-child relationship to behave in a certain way throughout the pendency of their lawsuit. *See* Travis County Standing Order Regarding Children, Property and Conduct of the Parties. She alleges that Richard has violated the standing order in a

*Consideration of Additional Documents*

Maria contends that the trial court was not presented with all relevant evidence relating to the community estate because Richard failed to disclose a considerable amount of evidence and provided inaccurate information about the estate, and Maria's trial counsel failed to properly present all relevant evidence or object to Richard's inaccurate information. Specifically, Maria requests that this Court consider the following evidence that was not presented to the trial court: (1) the amount of money Richard took "when closing checking and savings accounts that [were] not considered in the division of assets"; (2) the correct monthly income information for the Cerro Alto property; (3) the "Edward Jones accounts"; (4) the profits from the sale of the Bob Wire property; and (5) accurate information regarding Richard's rental income.

In making her arguments, Maria necessarily references documents that are not in the record. Although she attached many documents to her brief, such attachments are not part of the record and cannot be considered. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 n.17 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.) (holding that attachment of documents as exhibits or appendices to appellate briefs is not formal inclusion in record on appeal and documents therefore cannot be considered); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston

---

variety of ways. However, Maria did not raise this issue in the trial court and does not cite to any evidence in the record supporting her argument. *See* Tex. R. App. P. 33.1, 38.1(i). Therefore, the issue is waived. *See Devine v. Dallas County*, 130 S.W.3d 512, 513-14 (Tex. App.—Dallas 2004, no pet.); *Wilcox v. Hempstead*, 992 S.W.2d 652, 656-57 (Tex. App.—Fort Worth 1999, no pet.).

[14th Dist.] 2002, no pet.) (same). Accordingly, we overrule all of Maria's issues relating to the consideration of documents not considered in the trial court.[5]

### Disclosure of Additional Documents

Maria also argues that Richard failed to disclose a considerable amount of information pertinent to the division of the estate, and she requests that this Court order him to disclose the information. She seeks disclosure of: (1) all information pertaining to four individual accounts Richard had with Edward Jones; and (2) the sale amount of the Bob Wire property. However, Maria has not cited, and we have not found, any legal authority empowering this Court to order disclosure of documents allegedly not provided to the trial court. Further, as we have already stated, we will not consider documents that are not included in the record. *See Gonzalez*, 251 S.W.3d at 777 n.17; *Nguyen*, 93 S.W.3d at 293. Thus, we overrule Maria's issues pertaining to the disclosure of documents.

### Reversal of Divorce Decree

Maria contends that the trial court erred in denying her request for spousal maintenance and in failing to award her a portion of the proceeds of the Bob Wire property.

#### A.    Spousal Maintenance

Maria contends that she was entitled to spousal maintenance because (1) she had to quit her job with the Eanes School District and move to New Braunfels because of Richard's

---

[5] Maria also seeks a revision of the divorce decree based on the additional documents she would like us to consider. Because we will not consider additional documents that are not in the record, we also will not revise the divorce decree based on those documents. We therefore overrule this issue.

6

harassment, and it was difficult to find a new job without a teaching license; and (2) she did not want to use the money she received from a pre-hearing sale of a jointly owned property because using it would require her to pay at least twenty-eight percent in taxes.

A trial court's decision to award or not award spousal maintenance is reviewed under an abuse-of-discretion standard. *See Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.). An award of spousal maintenance is intended to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *See id*.; *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.). A trial court may order maintenance if the duration of the marriage was ten years or longer, the spouse seeking maintenance lacks sufficient property to provide for his or her minimum reasonable needs, and the spouse seeking maintenance: (1) cannot support him or herself due to an incapacitating physical or mental disability; (2) is the custodian of a child with a disability requiring substantial care and supervision, or (3) lacks adequate earning ability. Tex. Fam. Code Ann. § 8.051 (West 2006).

There is, however, a general presumption that spousal maintenance is not warranted "unless the spouse seeking maintenance has exercised diligence in: (1) seeking suitable employment; or (2) developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending." Tex. Fam. Code Ann. § 8.053(a) (West 2006).

At the divorce hearing, Maria testified that she planned to work after the divorce. Specifically, the following exchange occurred between Maria and her trial counsel:

7

Counsel:    Are you going to be working?

Maria:      Yes, sir, I am.

Counsel:    And how much are you likely to make?

Maria:      Probably 12.50 to $13 an hour, although I got a job offer for 15 in Houston, Texas.

In addition, a friend of Maria's who was a guest-service manager at a hotel testified that he would hire her as a manager at the hotel if she needed a job. He testified that managers at the hotel started at about $25,000 to $35,000 a year and received benefits.

In addition to any income she planned to earn by working, Maria was also awarded the two Lipan Trail properties, which are both income-producing properties. Maria testified that she could rent the first Lipan Trail property for $800 per month. She testified that after subtracting taxes, insurance payments, and maintenance costs, she would earn $564.53 a month from the property. Regarding the second Lipan Trail property, Maria testified that she could rent each of the two units on the property for $650 per month, amounting to a total of $1,300 per month. After subtracting taxes, insurance payments, and maintenance costs, she testified that she would earn $996.03 per month from the property. She also testified that she received $54,000 from the pre-hearing sale of seven acres of property the couple had owned and that she had about $15,000 of the money left. In addition, the trial court awarded Maria half of Richard's retirement account, which amounted to approximately $100,000.

On appeal, Maria argues that the trial court should have awarded her spousal maintenance because she was unemployed at the time of the divorce hearing and did not want to use

8

money that would be heavily taxed. However, given the assets awarded to her; the money she received from the pre-hearing sale of property; the testimony at trial regarding her plans to work and the amount she was likely to earn; and the presumption that spousal maintenance is not warranted; we conclude that the trial court did not abuse its discretion in declining to award spousal maintenance. We therefore overrule this issue.

### B. Proceeds of Bob Wire Property

Maria also contends that the trial court erred in awarding the proceeds of the sale of the Bob Wire property solely to Richard. Maria alleges that she should have been awarded at least a third of the proceeds of the sale of the property because she: (1) initially found the property; (2) assisted in improving and maintaining the property; and (3) contributed some of her money for expenses related to the property.

A trial court is charged with dividing the parties' community estate in a "just and right" manner, having due regard for the rights of each party. Tex. Fam. Code Ann. § 7.001 (West 2006); *Moroch v. Collins*, 174 S.W.3d 849, 855 (Tex. App.—Dallas 2005, pet. denied). We use an abuse-of-discretion standard in reviewing the trial court's division of the property in a divorce decree. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court is presumed to have properly exercised its discretion in dividing the assets of a marriage. *Id*. at 699. A trial court abuses its discretion if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). We will reverse on appeal only if the property division is so disproportionate as to be manifestly unfair. *O'Carolan*, 71 S.W.3d at 532.

9

Here, the trial court awarded Richard the Cerro Alto property, the Bob Wire property, half of his retirement account, and two cars. The trial court ordered Richard to sell the Bob Wire property, and with the proceeds of the sale, to repay the loan for the property. Any money remaining from the sale of the property after repaying the loan was awarded to Richard. The trial court awarded Maria half of Richard's retirement account, the two Lipan Trail properties, and two cars.

Maria does not point to, and the record does not show, any evidence establishing that the trial court's division of the community estate was not equitable. Although Richard was awarded the proceeds of the sale of the Bob Wire property, he was also ordered to repay the loan on the property. In addition, Richard was responsible for the loans on the Cerro Alto property and the two cars awarded to him. Maria was awarded two income-producing properties and was not responsible for any loans. Considering all of the evidence in the record, we conclude that the trial court did not abuse its discretion in awarding Richard the proceeds of the Bob Wire property. *See Murff*, 615 S.W.2d at 698-99.

*Ineffective Assistance*

Maria requests that this Court order Richard to pay for her trial attorney's fees because her trial counsel provided ineffective assistance. In support of her claim of ineffective assistance, Maria alleges that her trial counsel: (1) did not question or object to inaccurate financial information provided by Richard; (2) did not draw attention to contradictory or untruthful statements made by Richard; (3) ignored her requests that he object to inaccurate information or provide accurate information; and (4) sought a no-fault divorce rather than a divorce on the grounds of mental cruelty, as was desired by Maria. However, the doctrine of ineffective assistance generally

10

does not extend to civil cases. *See McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.); *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 343 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Although an exception to the general rule has been created with regard to trial counsel in parental termination cases, *see In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003), the case before us does not fall within the exception. Thus, the doctrine of ineffective assistance does not apply to this case. Accordingly, we overrule this issue.

### *Issuance of Peace Bond*

Maria also complains that the trial court did not issue a peace bond to protect her from Richard's alleged harassment, and she requests that this Court issue a peace bond. She alleges that Richard has subjected her to harassment in person and by telephone and email, including threatening to approach her and say, "Hello Wife" when he sees her in public. She contends that her trial counsel should have sought a peace bond but did not.

A peace bond is used in a criminal context and may be issued when a magistrate is informed under oath that an offense is either about to be committed or has been threatened against someone. *See* Tex. Code Crim. Proc. Ann. art. 7.01-.18 (West 2005) (describing procedure for issuing peace bond). Here, Maria did not file an application for a peace bond or otherwise make a claim to the trial court that Richard was about to commit, or had threatened to commit, a crime against her. She testified at the hearing that she had to quit her job and move from Austin to New Braunfels because Richard harassed her by calling her, sending her emails, and approaching her and her friends. However, the evidence shows that Richard was handling the rental properties during the separation, and Maria testified that when Richard contacted her, he asked questions about the rental properties and asked her to sign contracts. Thus, not only did Maria not file an application for a

11

peace bond or inform the trial court of her desire for a peace bond, she also does not point to any evidence in the record to suggest that Richard was about to commit a crime or had threatened to commit a crime against her. Accordingly, we overrule this issue.

*Other Miscellaneous Requests*

### A.      Supervision of Taxation of Properties

Maria requests that this Court "oversee the way the properties [were] taxed." However, she does not explain her request other than to state that her reason for it is that Richard told her that she would be spending "an observant [sic] amount" on taxes. Further, she does not cite, and we have not found, any legal authority for such a request. *See* Tex. R. App. P. 38.1(i). Accordingly, we overrule this issue.

### B.      Disclosure of All Signed Documents

In another issue, Maria requests that we order Richard's trial attorney to disclose copies of all documents signed by Maria during the pendency of the lawsuit. She alleges that she signed some of the documents "under extreme stress" and that she "was talked into signing several documents with no legal representation available." However, she does not cite to any evidence in the record to support her request, nor does she cite any legal authority for such a request. *See id*. We therefore overrule this issue.

### C.      Refinancing of Properties Awarded to Richard

Maria also asks this Court to request that Richard refinance the Cerro Alto property and one of the vehicles awarded to him in the divorce decree. She alleges that she cannot refinance

the home in which she lives because the Cerro Alto property and the vehicle are still in her name. To the extent that Maria's request relates to an enforcement of the divorce decree, she must seek enforcement in the trial court. *See* Tex. R. Civ. P. 308; Tex. Fam. Code Ann. § 9.006(a). To the extent that the request relates to something other than enforcement of the divorce decree, she has not cited, and we have not found, any legal authority for such a request. *See* Tex. R. App. P. 38.1(i). Thus, we overrule the issue.

### *Damages for Filing Frivolous Appeal*

In a motion filed with this Court, Richard requests that we determine that Maria's appeal is frivolous and award damages in the amount of $6,570 in attorney's fees.[6] *See* Tex. R. App. P. 45 (permitting appellate court to award prevailing party "just damages" upon determination that appeal is frivolous). In determining whether an appeal is frivolous, we review the record from the appellant's viewpoint and decide whether the appellant had reasonable grounds to believe the judgment could be reversed. *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Whether to grant sanctions for a frivolous appeal is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances. *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Although there are various deficiencies in Maria's

---

[6] After Richard filed a motion for damages, Maria filed a motion titled "Appellant's Counter 'Appellee's Motion for Damages.' " Because her motion is, in substance, a response to Richard's motion for damages, we treat it as a response rather than a counter-motion.

appeal, and although we have rejected her arguments, we exercise our discretion to deny Richard's motion.

## CONCLUSION

Because we have overruled each of the issues raised by Maria, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   April 29, 2010